IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES MARSHALL, | ) | CASE NO. 1:03 CV 2218 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| STATE OF OHIO, *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondents. | ) | |

## I.  Introduction

Before the Court is Charles Marshall's petition for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254.[1]  Respondent the State of Ohio, proceeding through the Prosecuting Attorney of Cuyahoga County, opposes the petition.[2]

Marshall is currently incarcerated at the Lebanon Correctional Institution after two trials on charges of one count of aggravated murder with two capital specifications, three counts of aggravated robbery with firearm specifications, and three counts of kidnapping with firearm specifications, which resulted in mistrials.[3]  State proceedings for a third trial on the same charges have been stayed pending adjudication of this petition.[4]

---

[1] ECF # 1.

[2] ECF # 17.

[3] ECF # 1.  Marshall is also incarcerated for his conviction on charges of aggravated robbery, kidnapping and felonious assault in another matter unrelated to this petition.  *See*, *State v. Marshall*, No. 73522, 1999 WL 126138 (Ohio App. 8 Dist. Feb. 25, 1999).

[4] ECF # 17, Ex. C.

## II.  Facts

The following statement of facts was prepared for the presiding judge of the Cuyahoga County Common Pleas Court by the special prosecutor appointed by that court to investigate the facts and circumstances surrounding the declaration of a mistrial in Marshall's second trial:

Charles Marshall was indicted in a capital murder case arising out of the events of the evening of December 22, 1996.  On that night, two men entered the Papa John's Pizza shop in Garfield Heights to commit a robbery; the robbery escalated to murder when one of the two men shot and killed store manager Rocco Buccieri.  Charles Marshall, along with co-defendant Robert Martin, was charged with the murder of Buccieri and other, related offenses in January 1997, after Martin and Marshall were arrested and charged with several additional offenses arising out of a similar robbery attempt at a Long John Silver restaurant in Maple Heights.

The Papa John's and the Long John Silver cases against Marshall and Martin were originally assigned to Judge Timothy McGinty.  Judge McGinty presided over the Long John Silver robbery trial of Charles Marshall, and also the Papa John's capital murder trial of Charles Marshall.  At the conclusion of the capital murder trial, Marshall was convicted and sentenced to death.  Judge McGinty thereafter vacated the death penalty on the grounds that the jury had not been instructed on the sentencing option of life without parole.

After vacating the sentence, Judge McGinty, who had previously sentenced Marshall on his conviction in the Long John Silver robbery case, recused himself and the Marshall case was reassigned to Judge Carolyn Friedland.  Judge Friedland vacated the jury verdict of guilty on the homicide charge and, in the fall of 1998, impaneled a new jury.  During jury selection, the prosecution took an appeal of pre-trial rulings made by Judge Friedland to suppress certain evidence, including the in-court identifications by eye-witnesses, Rule 404(B) evidence relating to the Long John Silver robbery, and the statement by co-defendant Robert Martin.  The Court of Appeals reversed Judge Friedland on these pre-trial rulings and remanded the case.

In January 2001, jury selection resumed and a jury was seated. Opening statements were given on February 2, 2001.  During his opening statement, Assistant County Prosecutor Ed Walsh mentioned several prosecution witnesses by name, including Tony Haynes, who the prosecution expected to testify regarding a conversation that he (Tony Haynes) had with Charles Marshall.

Tony Haynes had given a written statement to the police and had testified as a prosecution witness in Marshall's trial before Judge McGinty. The substance of Haynes' written statement to the police and direct testimony in the trial before Judge McGinty was that Charles Marshall had told Haynes that he (Marshall) had robbed Papa John's along with an accomplice (Martin) and that he (Marshall) was the shooter.

During the trial before Judge Friedland, the prosecution called 25 witnesses, and read the prior testimony (from the trial before Judge McGinty) of a deceased witness into the record.  The prosecution also played the videotaped statement of co-defendant Robert Martin, who confessed to involvement in the robbery, but implicated Charles Marshall as the shooter. The defense called one witness.  Tony Haynes did not testify.

Tony Haynes did not testify at the trial before Judge Friedland because the prosecution, which had been in contact with Tony Haynes during the trial and had expected him to appear, was unable to produce him as a live witness. When the prosecution realized that it could not produce Tony Haynes, the prosecution asked that Tony Haynes' prior testimony from the trial before Judge McGinty be read into the record.

On Tuesday, February 13, 2001, Judge Friedland held a hearing outside the presence of the jury to determine whether Tony Haynes' prior testimony would be admitted.  At the conclusion of the hearing, Judge Friedland ruled that the prosecution had not made a sufficient showing of unavailability and ruled that the prior testimony was not admissible.

On the morning of Wednesday, February 14, 2001, the parties argued regarding the admissibility of exhibits.  Assistant County Prosecutor Walsh handled this task for the prosecution.  During this process, Assistant County Prosecutor Walsh stated that Tony Haynes' prior written statement (State's Exhibit # 37) was "withdrawn."

Closing arguments were delivered immediately after the arguments regarding the exhibits.  Judge Friedland then charged the jury, and submitted the case to it late in the afternoon.

Upon completing her charge, Judge Friedland instructed the attorneys to assemble the exhibits for submission to the jury. The exhibits were then carried by Detective Paul Mazzola and defense attorney Bill McGinty to the door outside the jury room in three boxes belonging to the prosecution – boxes which the prosecution had used to carry its exhibits to and from the court room each day.  The bailiff then placed the boxes in the jury room.

The jury did not deliberate on Wednesday and instead immediately proceeded to the hotel where they were sequestered. The jury did not examine any exhibits on Wednesday afternoon before retiring to the hotel.  The boxes containing the exhibits were locked in the jury room overnight.

The jury deliberated all day on Thursday, February 15, 2001, during which time the jury closely examined the contents of one box of exhibits. During this process, a juror noticed the Tony Haynes statement (State's Exhibit # 37) and raised a question regarding its presence among the exhibits. The jury did not immediately communicate with the court upon the discovery of the Tony Haynes statement.  Instead, the jury continued to deliberate for the remainder of Thursday afternoon.

On the morning of February 16, 2001, the jury foreman delivered a note to the bailiff, reading, "Question: we, the jury, have an exhibit in our possession that was referenced during the trial but was never introduced as evidence. (Tony Haynes statement, State Exhibit 37). Is this acceptable by law?"  The note was given to the bailiff along with the Tony Haynes statement, which bore a red State's exhibit sticker, numbered 37.  The bailiff delivered the note and State's Exhibit # 37 to Judge Friedland.

Judge Friedland recognized State's Exhibit # 37 as the prior statement of Tony Haynes given to Garfield Heights Police Detective Paul Mazzola.  As noted above, the statement was largely consistent with Haynes' prior testimony in the trial before Judge McGinty and was damaging to the defense.  After

consulting with fellow judges, Judge Friedland took the bench and declared a mistrial, based on "prosecutorial misconduct."[5]

After the mistrial was declared, court reporter Jeff Ragazzo proceeded to the jury room and collected certain items, including the non-clothing exhibits and verdict sheets, which had been partially completed by the jury. During this process, Mr. Ragazzo found two additional written statements of prosecution witnesses William Lain and Richard Haynes, both of whom had testified during the trial before Judge Friedland.  These statement bore red State's Exhibit stickers 12-A and 39 respectively.  Neither of these statements had been admitted as evidence; both were identified by Assistant County Prosecutor Walsh during the arguments over the admissibility of exhibits as statements which were "to go with the record."

On Tuesday, February 20, 2001, Judge Friedland, her bailiff, court reporter Jeff Ragazzo, and an Assistant County Prosecutor who had no involvement in the case re-entered the jury room which had been locked since the mistrial.  They collected the bulkier clothing items, a drawing and an aerial photograph, all of which had been left inside the jury room since the mistrial was declared.

On February 22, 2001, Cuyahoga County Prosecutor William Mason filed an application to appoint the undersigned as Special Prosecutor "to determine the circumstances  under which State's Exhibit # 37 was obtained by the jury."  That application was granted by Judge Richard A. McMonagle on the same date.[6]

The special prosecutor then commenced an investigation that, among other things, involved interviewing all the relevant persons, including all the jurors, and reviewing "the complete trial transcript, exhibit lists, documents from the prosecutor's files, portions of the

---

[5] Although, as noted here in the special prosecutor's report, the trial judge's declaration of a mistrial was given in open court as due to "prosecutorial misconduct" (ECF # 53, Ex. 158, Ex. L), that conclusion was later revised in the state court record so that the stated reason a mistrial was granted was because "out of court statement of Tony Haynes (States Exhibit 37) not properly before jury." ECF # 52, Ex. 91.

[6] ECF # 17, Ex. A, Report of the Special Prosecutor, at 1-6.

defense files, and miscellaneous items maintained by court reporters."[7]  Beyond the interviews, five persons were asked to take polygraph tests conducted by the F.B.I., and all but one person asked to take a polygraph test did so.[8]

At the conclusion of the investigation, the results were presented to the grand jury which did not vote to indict anyone.[9]

In submitting his final report, the special prosecutor noted that everyone interviewed denied submitting the documents to the jury, having a motive to submit the documents to the jury, or having any knowledge of how the documents came to be in the jury's possession.[10]

However, despite the lack of a "smoking gun," the special prosecutor did state that his investigation made it "possible to make a number of relevant factual findings with a high degree of certainty."[11]  After reviewing the physical evidence, the interviews and the polygraph examinations, the special prosecutor concluded that all except assistant county

---

[7] *Id.* at 6.

[8] *Id.*  Defense attorney Bill McGinty (*id*. at 16); detective Paul Mazzola (*id*. at 18); assistant county prosecutor Kim Mahaney (*id*. at 20); and assistant county prosecutor Ed Walsh (*id* at 21) all agreed to take a polygraph test.  Defense attorney Steve McGowan (*id*. at 17) declined on the ground that it would be inappropriate for a defense lawyer to agree to a polygraph examination.

[9] *Id.*

[10] *Id.* at 7.

[11] *Id*.

prosecutor Walsh could be "excluded as a potential perpetrator of an intentional act involving the submission of the Tony Haynes statement to the jury."[12]

While Walsh "vehemently denie[d] he engaged in any wrongdoing," the special prosecutor found that "there is evidence that makes it difficult to credit this denial."[13] Specifically, the special prosecutor noted that Walsh handled the Tony Haynes statement "more than anyone else,"[14] had the opportunity to put it in the box of things going to the jury,[15] was the only one who failed the F.B.I. polygraph test,[16] and made statements "difficult to reconcile with complete innocence on his part."[17]

In that regard, the special prosecutor reported the following:

Mr. Walsh stated that while he had done nothing wrong and had no knowledge of how the statement got before the jury, he might be willing to say that he had done something with the Tony Haynes statement if it could be guaranteed that the state could re-try Mr. Marshall.[18]

---

[12] *Id.* at 13. Exclusion of Judge Friedland and her bailiff (*id.* at 14); exclusion of the court reporters (*id.* at 14-15); exclusion of defense attorney Bill McGinty (*id.* at 15-16); exclusion of defense attorney Steve McGowan (*id.* at 16-18); exclusion of Detective Paul Mazzola (*id.* at 18-19); and exclusion of assistant county prosecutor Kim Mahaney (*id.* at 19-20).

[13] *Id.* at 20.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 21.

[17] *Id.* at 22.

[18] *Id.*

While acknowledging that the foregoing statement might reflect a "noble" motive of bringing a killer to justice, the special prosecutor also found the statement "troubling" and susceptible of multiple interpretations.[19]  He determined that "[i]t is either an admission of past misconduct, or a statement of willingness to engage in future misconduct."[20]

Nonetheless, the special prosecutor ultimately concluded that "this evidence is not sufficient to sustain a criminal charge against Mr. Walsh."[21]  The grand jury agreed, and no indictment was returned against Walsh in this matter.

The state moved to reinstate the original verdict of the first trial, arguing that the second trial judge had lacked the authority to vacate the original trial judge's order denying Marshall's motion for a new trial.[22]  Following a hearing,[23] Judge Cirigliano, the third judge assigned to this case, denied the state's motion.[24]

For his part, Marshall moved to dismiss the charges against him with prejudice on the basis that the double jeopardy provisions of the Fifth and Fourteenth Amendments to the

---

[19] *Id.*

[20] *Id.*

[21] *Id*. at 25.

[22] ECF # 52, Ex. 152. Marshall objected to this motion. *Id*. at Ex. 155.

[23] ECF # 53, Ex.186.

[24] ECF # 52, Ex. 117.

United States Constitution barred a retrial.[25]  Marshall argued that under the rule promulgated by the United States Supreme Court in *Oregon v. Kennedy*,[26] "if there is proven to be misconduct by the prosecutor, done in a purposeful manner, the State will be barred from retrying the case."[27]

In response, the state asserted that the correct statement of the rule in *Kennedy* was that mere prosecutorial misconduct leading to a mistrial is not sufficient to trigger the double jeopardy bar to retrial.[28]  Citing the Seventh Circuit case of *United States v. Oseni*,[29] the state maintained that a mistrial caused by prosecutorial misconduct will not preclude a retrial unless the prosecutorial misconduct was specifically intended to abort the trial.[30]  Accordingly, the state argued that the correct rule, as stated by *Oseni*, was "unless [a prosecutor] is trying to abort the trial, his misconduct will not bar a retrial.  It doesn't even matter that he is acting improperly, provided his aim is to get a conviction."[31]

---

[25] Marshall originally made the motion *pro se* (ECF # 52, Ex. 154).  Subsequently, the motion was made again by counsel, accompanied by a brief in favor of the motion (ECF # 53, Ex 158).  The state filed a brief in opposition (*id*. at Ex. 160), to which Marshall responded with a supplemental brief (*id.* at 161).

[26] *Oregon v. Kennedy*, 456 U.S. 667 (1982).

[27] ECF # 53, Ex. 157 at 4.

[28] *Id*., Ex. 160 at 3.

[29] *United States v. Oseni*, 996 F.2d 186 (7th Cir. 1993).

[30] ECF # 53, Ex. 160 at 4.

[31] *Id.*, quoting *Oseni,* 996 F.2d at 188, citing *Kennedy*, 456 U.S. at 675-76.

Again following a hearing,[32] Judge Cirigliano denied Marshall's motion in a written opinion that was specifically based on both *Kennedy* and *Oseni*.[33]  The trial judge stated the applicable federal law to be that "unless it can be shown that the prosecutor's specific intent was to abort the trial, prosecutorial misconduct, if any, will not bar a retrial for the same offense."[34]

The state court found initially that the special prosecutor's report disclosed "no direct evidence of prosecutorial misconduct" in this case.[35]  Further, the state court found that there was no "evidence that supports the conclusion that any prosecutor acted with an intent to cause a mistrial in this case," and the special prosecutor's  report "makes no conclusion, either directly or indirectly, that any prosecutor intended to cause or in any way force a mistrial in this matter."[36]

---

[32] ECF # 53, Ex. 187.

[33] ECF # 52, Ex. 118.  This document is not internally paginated, nor, contrary to the Magistrate Judge's Order (ECF # 7), is this part of the state court record sequentially paginated with the entire record.

[34] *Id.*

[35] *Id*.

[36] *Id.*

Therefore, the court concluded, "[a]bsent a showing that the prosecutor's conduct was intentionally calculated to cause a mistrial," the double jeopardy provision of the Constitution was not triggered and Marshall's motion to dismiss was denied.[37]

Marshall now seeks habeas relief on three grounds:

1.  The commencement of a third trial violates Petitioner's Fifth Amendment rights against Double Jeopardy;

2.  The admission into evidence of co-defendant Ralph Martin's out-of-court video statement given to the Garfield Heights Police Department violates Petitioner's Sixth Amendment rights to be confronted with witnesses against him;

3.  The actions of state trial counsel were designed to cause a mistrial or illegally and unfairly convict a person with inadmissible evidence violating Petitioner's Fifth Amendment rights to due process of law.[38]

In response, the state argues:

1.  In respect of ground one of the petition, the trial court's dismissal of Marshall's motion to dismiss was not contrary to, nor an unreasonable application of clearly established federal law in *Kennedy* and *Oseni* which is applicable to this case;[39]

2.  As to ground two, the admissibility of any evidence at a future trial is not a proper matter for a habeas petition, but rather is, in essence, "a pretrial motion in limine;"[40]

---

[37] *Id.* Though not relevant to a *Kennedy/Oseni* analysis founded on a necessary predicate of intent to cause a mistrial, the court here also concluded that the special prosecutor had not presented "any evidence of prosecutorial misconduct at all." *Id.*

[38] ECF # 1.

[39] ECF # 17 at 10.

[40] ECF # 63 at 14.  This document is not internally paginated.  The page number has been independently determined by the Magistrate Judge.

3.      Concerning ground three, the state court's decision that there was no
        intent on the part of the prosecutor to cause a mistrial was not contrary
        to or an unreasonable application of clearly established federal law.[41]

### III.   Analysis

**A.      Timeliness and availability of the writ**

The state court denied Marshall's motion to dismiss on grounds of double jeopardy

in a written opinion on January 15, 2003.[42]  Marshall filed the present petition on October 31,

2003.[43]

The Sixth Circuit has held in *Harpster v. Ohio*[44] that a federal habeas petition is

"appropriate when those [double jeopardy] claims have been raised and rejected in the state

trial court and under state law there is no right to interlocutory appeal."[45]  The *Harpster* court

further concluded that, under Ohio law, "the overruling of a motion to dismiss on the grounds

of double jeopardy is *not* a final appealable order."[46]

---

[41] *Id.* at 13.

[42] ECF # 52, Ex. 118.

[43] ECF # 1.

[44] *Harpster v. Ohio*, 128 F.3d 322 (6th Cir. 1997).

[45] *Id*. at 325-26.

[46] *Id*. at 325, quoting *State v. Crago*, 53 Ohio St. 3d 243, 244, 559 N.E.2d 1353, 1355
(1990) (emphasis in original).

Accordingly, Marshall's petition is an appropriate one for habeas relief and has been timely filed within the one-year statute of limitations created by 28 U.S.C. § 2244(d)(1)(D).[47]

**B.  The trial court's denial of Marshall's motion to dismiss for double jeopardy was neither contrary to nor an unreasonable application of clearly established federal law.**

*1.  Applicable law – habeas review*

28 U.S.C. § 2254(d)(1) provides that an application for a writ of habeas corpus filed by a person in custody pursuant to a judgment of a state court shall not be granted unless the state judgment was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

As construed by the Supreme Court in *Williams v. Taylor:*[48]

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[49]

---

[47] "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of ... (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Accord*, *Harpster*, 128 F.3d at 325-26.

[48] *Williams v. Taylor*, 529 U.S. 362 (2002).

[49] *Id.* at 412-13.

The *Williams* Court emphasized that the proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect.[50]

The Sixth Circuit has held that the decision by a state court to grant a mistrial on the basis of manifest necessity presents a mixed question of law and fact to the federal habeas court.[51]  As such, while basic, primary facts found by the state court are presumed to be correct while no such presumption is accorded mixed questions of law and fact.[52]

## 2.    *Applicable law – mistrial for manifest necessity*

In *United States v. Perez*,[53] the Supreme Court first formulated the test for determining whether a mistrial should be declared for manifest necessity:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated.  They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.  To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes....[54]

---

[50] *Id*. at 409-12.

[51] *Harpster,* 128 F.3d at 327. "The question of manifest necessity is heavily fact-intensive – a mixed question of law and fact...."

[52] *Thompson v. Keohane,* 516 U.S. 99, 109-10 (1995).

[53] *United States v. Perez*, 22 U.S. (9 Wheat.) 579.

[54] *Id*. at 580.

-14-

In subsequent decisions, the Supreme Court has "further explained and developed the contours of the 'manifest necessity' doctrine."[55]

In *United State v. Jorn*,[56] the Court emphasized that the manifest necessity doctrine is not appropriate for "rules based on categories of circumstances which will permit or preclude retrial."[57] As the Court stated in *Illinois v. Somerville*,[58] this absence of a fixed set of circumstances for determining manifest necessity is required by "the varying and often unique circumstances arising in a criminal trial."[59]

Consequently, as noted by the Supreme Court in *Arizona v. Washington*,[60] a finding of manifest necessity does not require a determination that the trial court had no other alternative but to declare a mistrial:

> [T]he key word "necessity" cannot be interpreted literally; instead ... we assume that there are degrees of necessity and we require a "high degree" of necessity before concluding that a mistrial is appropriate.[61]

---

[55] *Harpster*, 128 F.3d at 328.

[56] *United States v. Jorn,* 400 U.S. 470 (1971).

[57] *Id*. at 480.

[58] *Illinois v. Somerville*, 410 U.S. 458 (1973).

[59] *Id.* at 462.

[60] *Arizona v. Washington*, 434 U.S. 497 (1978).

[61] *Id.* at 506.

-15-

In that regard, the *Washington* Court explained that finding whether the requisite "high degree" of necessity exists in a particular case involves applications of a continuum analysis:

> [T]he strictest scrutiny [of the trial court's decision] is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused.[62]

In contrast, however, the Court continued, "along the spectrum of trial problems which may warrant a mistrial," the situation where the trial judge declares a mistrial when confronted with evidence of possible juror bias, "falls into an area where the trial judge's determination is entitled to special respect."[63]

As can be discerned from the *Washington* analysis, the question of whether a defendant may be retried after a mistrial declared for "manifest necessity" involves a second question of whether the prosecutor was the cause of that mistrial.

In *Oregon v. Kennedy*,[64] the Supreme Court considered the situation where the defendant moves for and receives a mistrial due to some action by the prosecutor.  Normally, as the *Oregon* Court observed, the defendant's own motion for a mistrial would obviate any

---

[62] *Id.* at 508.

[63] *Id.* at 510.  *Accord*, *United States v. Stevens*, 177 F.3d 579, 583 (6th Cir. 1999) (juror bias considered an area where trial judge's determination of mistrial is "entitled to special respect"); *see also*, *United States v. Cameron*, 953 F.2d 240, 245 (6th Cir. 1992) (mistrial determination based on judge's concern for jury impartiality must be accorded "the highest degree of respect," quoting *Washington*, 434 U.S. at 511).

[64] *Oregon*, 456 U.S. 667 (1982).

-16-

inquiry into "manifest necessity," and the Double Jeopardy Clause would be no bar to a retrial.[65]  However, the *Oregon* Court, citing *United States v. Dinitz*,[66] noted that:

> The Double Jeopardy Clause does protect a defendant against government actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions.**[67]**

Consequently, *Oregon* established the rule that:

> Prosecutorial misconduct that might be viewed as harassment or overreaching, even if sufficient to justify as mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.... Only where the government conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial....[68]

It must be emphasized that the rule stated in *Oregon* arose in the context of the defendant moving for a mistrial.  However, the plain reasoning of *Oregon* concerning a defendant's right to invoke the Double Jeopardy Clause when the mistrial was provoked by the prosecution seems fully applicable where the defendant has asserted that the mistrial was declared without his consent and was caused by prosecutorial misconduct.

Accordingly, the initial inquiry is whether the state court unreasonably applied the clearly established federal law concerning "manifest necessity" for declaring a mistrial.  If

---

[65] *Id*. at 672.

[66] *United States v. Dinitz*, 424 U.S. 600 (1976).

[67] *Oregon*, 456 U.S. at 674, quoting *Dinitz*, 424 U.S. at 611.

[68] *Id*. at 675-76.

it reasonably applied such law, the next issue is whether the state court reasonably applied the clearly established federal law of *Oregon* to determine that the prosecutor did not intentionally provoke the trial judge to declare the mistrial.

### 3.    *The defendant gave implied consent to the declaration of a mistrial, or, alternatively, the state trial judge reasonably applied clearly established federal law to find "manifest necessity" for declaring a mistrial.*

*a.    The defendant here gave implied consent to the declaration of a mistrial.*

Although not asserted by the state, a careful review of the facts establish that Marshall gave implied consent to the declaration of a mistrial. In that case, there is no need to consider if the decision is founded on "manifest necessity" or, just as important, there is no need to consider if the rule in *Washington* was properly applied, since the protection of the Double Jeopardy Clause cannot be invoked by a defendant who has agreed to the declaration of the mistrial.

Because the issue of implied consent was not argued by the state, and was only briefly addressed by Marshall in a short preemptive argument in his traverse,[69] it is important to briefly restate some relevant facts as they apply to this issue.

The decision to declare the mistrial was made by Judge Friedland on February 16, 2001 after receiving a note from the jury indicating that they had in the jury room the Tony Haynes statement referenced at trial but never admitted into evidence.[70] The special

_____

[69] ECF # 60 at 11. This document is not internally paginated. The page number has been independently determined by the Magistrate Judge.

[70] ECF # 53, Ex. 157 at Ex. C, pp. 5-6 (report of special prosecutor).

prosecutor's report notes that prior to assuming the bench to inform counsel of the note and present her decision as to how to respond to the situation, Judge Friedland consulted with fellow judges of the Cuyahoga County Common Pleas Court.[71]

After that consultation, Judge Friedland read the jury note aloud to counsel for the state and the defendant outside of the presence of the jury.[72]   Immediately after reading the jury's note, and observing that Tony Haynes' statement was "referenced three times during the trial, and the Court made specific rulings with regard to this statement," Judge Friedland asked, "Do I hear a motion from the defense?"[73]

The record indicates that Assistant Prosecutor Walsh spoke then, stating, "I don't know how that got in there, Judge."  Judge Friedland responded, "Well, we will be having a hearing on that.  I'm declaring a mistrial, and I will entertain motions.  We will have a hearing in two weeks."[74]

Only at that point does one of Marshall's attorneys speak, simply saying, "Thank you, your honor."  Judge Friedland concludes the hearing by saying, "All right.  Prosecutorial misconduct is the reason for the mistrial."[75]   A journal entry noting that a mistrial was

---

[71] *Id.*

[72] *Id.* at Ex. B

[73] *Id.*

[74] *Id.*

[75] *Id.*  The entire transcript is attached as Ex. B to ECF # 53, Ex. 161 (Supplement to Defendant's Motion to Dismiss with Prejudice).  It is also quoted in full in Marshall's Traverse.  ECF # 60 at 4.

declared because "out of court statements of Tony Haynes (State's Exhibit 37) not properly before the jury," was filed on February 23, 2001.[76]

Initially, in determining if the trial judge unreasonably applied the "manifest necessity" test in federal law, the court must consider if the defendant objected to the grant of a mistrial. As noted by the Supreme Court in *Washington*, the burden on the prosecutor to demonstrate "manifest necessity" attaches only for "any mistrial declared over the objection of the defendant."[77] In the analogous situation of a mistrial being granted at the behest of the defendant, the Supreme Court in *Oregon* stated, "quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him,

---

[76] ECF # 52, Ex. 91. There was extensive discussion during the hearing on the motion to dismiss as to what effect should be given to the statement in open court that the mistrial was due to "prosecutorial misconduct" and to the absence of that concept in the final journal entry, which, apparently, was entered after an earlier submitted, but not recorded, entry containing the language on prosecutorial misconduct was withdrawn. *See*, ECF # 53, Ex. 187 at 37-42. First, the rule is well-settled that in Ohio a court speaks only through its journal. *Schenley v. Kauth*, 160 Ohio St. 109, 113 N.E.2d 625 (1953) (syllabus at 1). Further, it is equally well-settled that a judge may revise any pronouncements before final journal entry. *See*, *State ex rel. Marshall v. Glavas*, 98 Ohio St. 3d 297, 297-98, 784 N.E.2d 97, 98-99 (2003) (citing *Schenley*). Any pronouncement that is not incorporated into the final journal entry has no force or effect. *State v. Keenan*, 81 Ohio St. 3d 133, 154, 689 N.E.2d 929, 948 (1998) (citing *Schenley*). These principles have been explicitly applied where the trial court revises a ruling on a mistrial. *State v. Stewart*, No. 2001-P-0035, 81 Ohio St. 3d 133 at * 3 (Ohio Ct. App. 11th Dist., Dec. 27, 2002) (trial court's mistaken declaration of a mistrial had no effect when that judgment was not journalized, citing *Schenley*).

[77] *Washington*, 434 U.S. at 505.

-20-

and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause."[78]

Marshall admits that "[a]t the time Trial Judge 2 [Judge Friedland] declared a mistrial the Defendant and his counsel did not object to the mistrial, but there was not an opportunity to do so."[79]

In fact, as evidenced by the transcript of the proceedings in open court when the mistrial was declared, Judge Friedland, prior to making any pronouncement, directly asked defense counsel if they wished to offer any motions and later announced, contemporaneously with her declaration of a mistrial, that she would "entertain motions." Defense counsel was silent both times. Defense counsel spoke to thank the court.

The applicable federal law as to when and how a defendant may consent to the declaration of a mistrial indicates that "[c]onsent should not be assessed by the mechanical application of an absolute rule, but rather by an analysis informed by the weighty considerations inherent in criminal jeopardy."[80] Consent may be implied "only where the circumstances positively indicate a defendant's willingness to acquiesce in the [mistrial] order."[81] Further, "a defendant's failure to object to a mistrial implies consent thereto only

---

[78] *Oregon,* 456 U.S. at 672.

[79] ECF # 60 at 12.  This document is not internally paginated.  The page number has been independently determined by the Magistrate Judge.

[80] *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991) (citing *Washington*, 343 U.S. at 503-04).

[81] *Jones v. Hogg*, 732 F.2d 53, 57 (6th Cir. 1984).

if the sum of the surrounding circumstances positively indicate the silence was tantamount to acceptance."[82]

In *Glover*, the Sixth Circuit concluded that the defendant did not impliedly consent to the mistrial where the defendant had no opportunity to object and the trial court's actions were of a "summary nature," rendering "any objection both unlikely and meaningless."[83] By contrast, the Court in *Gantley*, found implied consent where the judge had an extensive discussion with counsel concerning a mistrial and potential alternatives prior to dismissing the jury.  The trial judge further twice asked defense counsel if there was "anything else" he wished to offer, and counsel failed to object to the proposed grant of mistrial.[84]

Here, the record  provides a significant basis for concluding that Marshall did consent to the declaration of the mistrial.  Contrary to Marshall's unsupported assertion in his traverse that Judge Friedland "made an emotional decision to declare a mistrial the moment she was

---

[82] *Unites States v. Gantley*, 172 F.3d 422, 429 (6th Cir. 1999).  As discussed by the Supreme Court in *Dinitz*, the consent to a mistrial is not equivalent to the waiver of a constitutional right, which must meet the knowing, intelligent and voluntary standard. *Dinitz*, 424 U.S. at 609, n.11. The equivalency argument fails to consider that the protection against multiple prosecutions may, in some cases, be served by the mistrial. *Id.*

[83] *Glover*, 950 F.2d at 1240 (citing *Jorn*, 400 U.S. at 487).

[84] *Gantley,* 172 F.3d at 425-26.

made aware of the statement reaching the jury,"[85] the facts establish that the trial judge did not fail to act "rationally, responsibly or deliberately"[86] in proceeding to declare the mistrial.

As previously noted, the special prosecutor's report found that the trial judge initially consulted with other judges upon receiving the note from the jury, and the record shows that the trial judge twice solicited motions in open court from counsel before journalizing the decision for a mistrial.  In this respect, the present case differs significantly from those cases where the decision to declare a mistrial was made on the spur of the moment within a heated courtroom exchange.[87]  It also differs from cases where the trial judge put direct pressure on counsel to "make the decision [to accept or oppose the mistrial] at that very moment."[88]

Instead, the present matter closely resembles the implied consent found by the District Judge in *Pryor v. Bock*.[89]  In *Pryor*, the federal court in a habeas matter concluded that the habeas petitioner had given implied consent to the state court's *sua sponte* declaration of a mistrial in his state felony trial for assault for intent to commit murder.

*Pryor* involved the situation where a crucial state witness – the police officer who was first on the scene to interview the victim of the assault of which Pryor was charged – did not

---

[85] ECF # 60 at 11.  This document is not internally paginated.  The page number has been independently determined by the Magistrate Judge.

[86] *Johnson v. Karnes*, 198 F.3d 589, 596 (6th Cir. 1999).

[87] *See*, *e.g.*, *Glover*, 950 F.2d at 1238 (judge declared mistrial in the midst of heated cross-examination).

[88] *Johnson*, 198 F.3d at 595.

[89] *Pryor v. Bock*, 261 F. Supp. 2d 805 (E.D. Mich. 2003).

-23-

appear pursuant to summons to testify at trial.  The trial judge stated he was inclined to grant

a mistrial and order the officer jailed for contempt.  The following colloquy then occurred:

> Mr. Filip [counsel for Pryor]: Your Honor, I have to – are you declaring
> a mistrial?
>
> The Court: Yes, sir.
>
> Mr. Filip: I would have to, on behalf of Mr. Pryor, then, ask for
> dismissal of the charges because this is the fault of the prosecution....
>
> [The prosecutor then stated that he had "done what is required under the
> court rules" as far as subpoenaing the witness.]
>
> Mr. Reid [counsel for another defendant]: Is the Court going to rule in
> regards to defense counsel's motion for dismissal?
>
> The Court: No.  I better deny that, through no fault of the prosecution
> in this person not being here.[90]

The federal habeas court concluded that:

> In contrast to defense counsel in *Glover*, Petitioner's attorney had ample
> opportunity to voice an objection to the mistrial.  Although the trial court
> *sua sponte* declared the mistrial, the Court finds that because Petitioner had the
> opportunity to object to the mistrial, but failed to do so, and insisted that the
> trial could not proceed fairly without the missing witness, Petitioner retained
> primary control over the course to be followed.[91]

Similarly, in the present case, Marshall's counsel had "primary control over the course

to be followed" in his trial.  They knew, once the trial judge had read the jury note, the basis

for any potential mistrial.  They were at a hearing convened outside the hearing of the jury

where they could speak openly.  They knew the jury had not been discharged.  Further, they

---

[90] *Id.* at 813.

[91] *Id.*

-24-

were directly asked if, on the facts as presented, there was "any motion from the defense?" They were further put on notice that the trial judge was seeking motions on the decision to declare a mistrial.[92]

It should also be noted that the District Judge in *Pryor* was "disturbed by the trial court's failure to consider alternatives to granting a mistrial."[93]   However, because the mistrial was given Pryor's implied consent, it was not necessary to consider what effect the absence of alternatives might have on a finding of manifest necessity.

Accordingly, as the Sixth Circuit stated in *Gantley:*

> Sixth Circuit precedent does permit us to find that Gantley impliedly consented to the declaration of a mistrial, even if Gantley's "positive indication" of consent was in the form of silence.  Further, we believe that the totality of the circumstances in this case justifies the conclusion that Gantley did, in fact, consent to Judge Forester's declaration of a mistrial.[94]

The Magistrate Judge, therefore, recommends that Marshall's petition be denied on the basis that he gave implied consent to the mistrial.

b.   *Alternatively, the state trial judge reasonably applied controlling federal law on "manifest necessity" in declaring the mistrial.*

Should the District Judge not accept the Magistrate Judge's recommended finding that Marshall gave implied consent to the declaration of a mistrial, the Magistrate Judge

---

[92] "I'm declaring a mistrial and I will entertain motions."  This is in contrast to the totality of circumstances in *Glover* that the Sixth Circuit found rendered a potential objection "difficult and possibly futile."  *Glover*, 950 F.2d at 1240.

[93] *Pryor*, 261 F. Supp. 2d at 813, fn.4.

[94] Gantley, 172 F.3d at 429.

-25-

recommends, in the alternative, that the District Judge find that the state trial court reasonably applied governing federal law on "manifest necessity" in declaring the mistrial.

Marshall argued at the state court hearing as to whether to dismiss the case or permit a retrial, and again in his traverse, that the state failed to show a "manifest necessity" for the mistrial.[95]  The state here does not address this issue, and the state judge that ruled on the motion to dismiss, despite acknowledging at the hearing that "[i]f the judge declares a mistrial there has to be manifest necessity for the declaration of a mistrial or else double jeopardy and jeopardy would have attached,"[96] did not address the question of manifest necessity in his written opinion denying Marshall's motion to dismiss.

As noted in the earlier exposition of the controlling federal law, the manifest necessity standard does not require a finding that the trial court had no other alternative but to declare a mistrial.[97]  Further, it is not required that the state trial judge make explicit findings as to the reasons for manifest necessity in declaring the mistrial.[98]

---

[95] ECF # 53, Ex. 187 at 62 (transcript of hearing); ECF # 60 at 8 (traverse).  Marshall has not provided any internal pagination for his 16-page traverse.  Therefore, the page number has been independently determined by the Magistrate Judge.

[96] *Id.* at 65-66.

[97] *Washington*, 434 U.S. at 506.

[98] *Id*. at 516-17.

In the absence of such findings, the decision of the trial judge is to be considered upon review of the entire record.[99]  Where the mistrial is declared for reasons of jury taint, it is to be accorded the "highest degree of respect."[100]  Even so, reviewing courts must satisfy themselves that, "in the words of Mr. Justice Story, the trial judge exercised 'sound discretion' in declaring a mistrial.  Thus, if a trial judge acts irrationally or irresponsibly, his action cannot be condoned."[101]

In that regard, reviewing courts are to consider factors such as whether the trial judge considered alternatives to the mistrial and the amount of time devoted to the decision.[102]  In addition, the reviewing court should examine if counsel had an opportunity to be heard.[103] Moreover, if the mistrial is sought by the prosecutor or is on the court's own motion, then the court's decision must reflect a balancing of the right of the defendant to have the trial completed by the panel summoned to sit in judgment on him against the public interest in seeing justice done.[104]

---

[99] *See*, *Wade v. Hunter*, 336 U.S. 684, 691 (1949) (courts must take "all circumstances into account" when deciding if a mistrial is appropriate).

[100] *Washington*, 434 U.S. at 511.

[101] *Id.* at 514.

[102] *Jorn*, 400 U.S. at 487.

[103] *Washington*, 434 U.S. at 514-15, n.34.

[104] *United States v. Scott*, 437 U.S. 82, 92 (1978).

Above all, the review must recognize that decisions to declare a mistrial are not subject to "any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique circumstances arising in a criminal trial."[105]

Here, Marshall has not cited to any specific legal standard by which a federal habeas court should, on review, invalidate a decision by a state trial judge to declare a mistrial.[106] He does assert, however, that the state must initially meet the burden of showing manifest necessity and argues that it has not done so.[107]

While Marshall correctly observes that the state has not developed any argument from the record to support a finding of manifest necessity, that omission is not fatal in that the law permits that analysis to be done upon a review of the entire record in light of the controlling federal law referenced above.

Accordingly, applying the "highest degree of respect" standard pronounced by *Washington* for cases involving jury taint*, and* performing that review with attention paid to the factors enunciated by the Supreme Court for ascertaining evidence of "sound discretion" in the actions of the trial judge, the evidence does not support a finding that the state trial court abused its discretion in declaring a mistrial.

---

[105] *Somerville*, 410 U.S. at 462.  *Accord*, *Harpster*, 128 F. 3d at 328. ("The manifest necessity inquiry is a flexible one, with reviewing courts analyzing the trial court's exercise of discretion in light of the facts and circumstances of each individual case.")

[106] *See*, ECF # 60 at 11-12.  In fact, Marshall appears to suggest that a federal habeas court is not required to accord any degree of deference to the state trial court.

[107] *Id.* at 8.

-28-

As noted earlier in the discussion concerning implied consent, the evidence is that the trial judge did not act precipitously, but took the time to consult with colleagues on the Common Pleas bench before proceeding to speak with counsel.  While there is no direct evidence that these consultations involved consideration of options to declaring the mistrial, the fact that the consultations occurred, and with judicial colleagues, is strong evidence that the trial judge was proceeding deliberately and with a "scrupulous exercise of judicial discretion."[108]

Further, when the trial judge concluded her consultations, she presented her intention to declare a mistrial in the context of one specific invitation to the defense to offer a motion and a second statement that she would entertain motions.  Notwithstanding that Marshall's attorneys did not offer any objections or present any motions, the evidence in the record is plain that they were afforded the opportunity to do so.

In that regard, Marshall's arguments here that the trial judge ignored numerous cures for the breach of jury integrity that did not involve a mistrial[109] simply highlight the question of why they were not advanced to the trial judge, or, alternatively, why time was not requested to brief such arguments before a mistrial was entered on the journal.  It is simply incorrect to claim, as Marshall does in his traverse, that the trial judge "made an emotional decision to declare a mistrial the moment she was made aware of the [Tony Haynes]

---

[108] *Jorn*, 400 U.S. at 485.

[109] ECF # 60 at 12 (limiting instruction; polling the jury to discern impact; letting the jury reach a verdict; and then, if necessary, declaring a mistrial).

statement reaching the jury"[110] and that the trial judge "did not allow the Defendant to argue his position on the ruling."[111]

Inasmuch as the federal habeas court here reviews the record to determine if applicable federal law was reasonably applied, and inasmuch as that test would require a finding that the trial court here was "objectively unreasonable" and not merely incorrect in declaring a mistrial, the Magistrate Judge recommends finding that, on the entire record, the state judge did not unreasonably apply applicable federal law and consequently further recommends not disturbing the decision of the state trial judge to find "manifest necessity" to declare a mistrial.

**2.      *The state trial judge properly found any prosecutorial misconduct was not intended to abort the trial.***

As noted, the trial judge analyzed Marshall's motion to dismiss under the rules set forth in *Kennedy*[112] and *Oseni.*[113]  Central to whether any prosecutorial misconduct resulting in a mistrial will also operate to bar a retrial because of double jeopardy is a finding that the prosecution intended to "abort the trial."[114]

---

[110] ECF # 60 at 11.

[111] *Id.*

[112] *Kennedy*, 456 U.S. 667.

[113] *Oseni*, 996 F.2d 186.

[114] *Id.* at 188.

The *Oseni* court emphasized:

A prosecutor who in closing argument comments improperly on the defendant's failure to take the stand, thus precipitating a mistrial or a reversal on appeal, is no doubt speaking deliberately, though his judgment may be fogged by the heat of combat. But unless he is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows that he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not the intent to prevail at this trial by impermissible means.[115]

The determination as to relevant intent of the prosecutor in this situation is a question of fact.[116] As such, 28 U.S.C. § 2254(e)(1) requires that:

[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Here, the state trial judge had a detailed report of facts found by the special prosecutor as a result of his investigation of the incident behind the mistrial,[117] as well as the briefs by both sides as to that report,[118] and a full hearing in open court.[119] While, as noted, the evidence gathered by the special prosecutor pointed strongly toward one assistant county

---

[115] *Id.*

[116] *Kennedy*, 456 U.S. at 675. "[A] standard that examines the intent of the prosecutor, though certainly not free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact." *See also*, *Oseni*, 996 F.2d at 189: "If the judge is not, or a reasonable judge would not be, satisfied with the prosecutor's explanation (of the conduct causing the mistrial), an evidentiary hearing is in order."

[117] ECF # 52, Ex. 113.

[118] *Id.*, Ex. 154; ECF # 53, Exs. 157, 161 (Marshall's motion and supplemental brief); ECF # 53, Ex. 160 (state's response to motion to dismiss).

[119] ECF # 53, Ex, 187.

prosecutor as being responsible for the Tony Haynes statement improperly being in the jury room, the special prosecutor could not definitively establish a motive for that action.

In fact, as the trial judge specifically, if imprecisely, noted in his decision, the special prosecutor did suggest that the comments from the assistant county prosecutor concerning his willingness to cooperate with the investigation provided that Marshall could be retried may have reflected a zeal to obtain a conviction, not a desire to sabotage the trial.[120]

Marshall's counsel also appeared, at the hearing, to credit the conclusion that zeal for a conviction, not an attempt to abort the trial, lay behind the prosecutor's actions:

> I think that Eddie Walsh, after 25 years service to the prosecutor's office, lost focus.  The Constitution at that point wasn't important to him, it was getting Marshall, and get Marshall at any means.

> Judge, I think what we have here is a prosecutor that went overboard, went too far to win at all costs.  And he took a document that was in his possession, he took three documents that were in his possession.  Tony Haynes' statement isn't the only document that went to the jury, there were two other witness's statements that were not admitted into the case by Judge Friedland that were also submitted, were also in front of the jury during their deliberations, but I think he lost his ability to remember the Constitution, the Bill of Rights, the protection we have as citizens right here and he was more focused on Charles Marshall.[121]

---

[120] ECF # 52, Ex. 118 at 3.  "The special prosecutor accepted that the prosecutor's aim was to secure a conviction."  As noted, the special prosecutor did not go so far as to make a conclusive determination as to motive for putting the Tony Haynes statement in front of the jury, and did not conclusively identify Walsh as the perpetrator, but only suggested that "attempting to bring a killer to justice" may have been a motive for Walsh's presumed willingness to confess if Marshall could be retried.  *See*, ECF # 52, Ex. 113 at 22.

[121] ECF # 53, Ex. 187 at 51-52 (argument by defense counsel William McGinty).

Here, Marshall has not met the burden prescribed by 28 U.S.C. § 2254(e)(1) and rebutted with "clear and convincing evidence" the presumption of correctness attaching to the factual finding of the trial court that the mistrial had not been shown to have been caused by the prosecution intending to abort the trial.[122]

Based then upon the fact, as found by the state trial judge, that the prosecutor cannot be found to have acted with an intent to abort the trial,  Marshall cannot establish that the trial court's decision to permit a  retrial was either contrary to or an unreasonable application of the clearly established federal law of *Kennedy* as applied in *Oseni*.

Marshall appears to contend that the state trial judge correctly identified the clearly established federal law in *Kennedy* but then misapplied it.  Marshall initially quotes an Ohio case citing *Kennedy* that double jeopardy will not bar a retrial "unless the judge's action was instigated by prosecutorial misconduct *designed to produce a mistrial*."[123]  However, Marshall thereupon proceeds to immediately restate the rule without the requirement of a finding that the misconduct was "designed to produce a mistrial:"

> Accordingly, if there is proven to be misconduct by the prosecutor, done in a purposeful manner, the State will be barred from retrying the case.[124]

---

[122] *See also*, *Wainwright v. Goode*, 464 U.S. 78, 85 (1983) (if two alternative factual findings find fair support in the record, a federal court may not substitute its view of the facts for that of the state court).

[123] ECF # 60 at 13 (emphasis added).  This document is not internally paginated.  The page number has been independently determined by the Magistrate Judge.

[124] *Id.*

Marshall likewise concludes his argument in this respect by again summarizing the applicable law without a reference to any finding of intent for prosecutorial misconduct:

> Once a mistrial is declared because of prosecutorial misconduct, double jeopardy attaches and the State is barred from trying that defendant again. Therefore, the State is barred from trying the Defendant [in this case] yet a third time.[125]

Though Marshall appears to be arguing that the state trial judge unreasonably applied clearly established federal law as regards mistrials induced by prosecutorial misconduct, he makes no straightforward argument to that effect. Rather, by incorrectly restating the rule from the correctly identified controlling federal case, he then bases his argument on the failure of the state court to use his own improper restatement of the rule.

Because the state court did properly identify the controlling federal law here, accurately discerned its terms, and then reasonably applied it to the facts of this case,[126] the Magistrate Judge recommends that Marshall's first ground for relief be denied.

---

[125] ECF # 60 at 14, internal citations omitted.

[126] Although Marshall suggests that "one can only conclude that Mr. Walsh acted knowingly and intentionally to cause a mistrial in this case" (*id.*), the fact that Walsh continued to deny involvement to the special prosecutor precluded directly asking him his motive for the misconduct. *Compare*, *Oseni*, 996 F.2d at 189 (matter remanded for evidentiary hearing to seek explanation from attorney admittedly responsible for making improper statements before the jury). Without a direct explanation as to motive, or the possibility of obtaining such an explanation, the trial court made a determination as to the most likely and credible motive from the facts uncovered by the special prosecutor. It is that finding that Marshall has not rebutted by "clear and convincing" evidence. And it is this factual finding that supports the state court's reasonable application of the controlling federal law on retrial after mistrial.

**C.      Excluding video testimony of Robert Martin in a future trial is not an issue for habeas relief.**

In his second ground for relief, Marshall seeks to preclude the admission at a future trial of an out-of-court video statement by co-defendant Robert Martin as violating Marshall's Sixth Amendment right to confront witnesses against him.[127]

In response, the state asserts that while Marshall must be allowed to raise the claim of impermissible double jeopardy in a pretrial petition for habeas corpus, such a petition cannot include any requests for rulings on the admissibility of evidence at a future trial.[128]

Whatever the merits of excluding this evidence may be, and Marshall devotes an entire section of his traverse[129] to arguing that admitting Martin's video testimony would be contrary to the Supreme Court's recent ruling in *Crawford v. Washington*,[130] Marshall has offered no basis for a federal habeas court to rule on a state law evidentiary question from a prior trial before that question has been submitted to state courts in the course of a new trial.

As the state here properly notes, the Supreme Court's decision in *Crawford* was not available during the prior litigation of this issue, and it would be expected that state courts

---

[127] ECF # 1.

[128] ECF # 63 at 14.  This document is not internally paginated.  The page number has been independently determined by the Magistrate Judge.

[129] ECF # 60 at 14-16.  This document is not internally paginated.  The page number has been independently determined by the Magistrate Judge.

[130] *Crawford v. Washington*, 541 U.S. 36 (2004).

-35-

will have the opportunity to consider *Crawford*'s application to the facts in Marshall's case when the issue is presented to them.[131]

      The Magistrate Judge recommends that Marshall's second ground for relief be denied.

**D.    The issue of the motive of the assistant prosecutor asserted as a separate basis of relief is part of ground one.**

      Marshall contends in his third ground for relief that "the actions of the State Trial counsel were designed to cause a mistrial or illegally and unfairly [to] convict a person with inadmissible evidence violating Petitioner's Fifth Amendment rights to Due Process of law."[132]

      In response, the state merely notes that Marshall supports this ground with "three sentences and no case law."[133]  Marshall does not address this ground in his traverse.

      While prosecutorial misconduct can state a claim for habeas relief, where the alleged misconduct has produced a mistrial, the only remedy available to a federal habeas court is to determine if the mistrial was properly declared and if, given the circumstances, a retrial is permitted or the defendant is free from further proceedings.[134]

      Those issues were the subject of thorough review under ground one of this petition. Inasmuch as no additional relief beyond being free from a retrial can be available here, and

---

[131] ECF # 63 at 15.  This document is not internally paginated.  The page number has been independently determined by the Magistrate Judge.

[132] ECF # 1.

[133] ECF # 17 at 11.

[134] *See*, *e.g.*, *Harpster*, 128 F.3d at 325.

-36-

that such relief has been addressed in another ground of this petition, and that Marshall has essentially not pursued this claim past its original statement, the Magistrate Judge recommends denying ground three.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the petition be denied on all grounds.

Dated:  May 16, 2006                    s/ William H. Baughman, Jr.
                                        United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[135]

---

[135] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).