UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES MARSHALL, | ) | CASE NO.  1:03 CV 2218 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| STATE OF OHIO, | ) | |
| | ) | |
| Respondent. | ) | |

The above-captioned case is before the Court pursuant to the Report and

Recommendation of Magistrate Judge William H. Baughman, Jr. ("R&R") **(ECF No. 68).**

Pending is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner

Charles Marshall ("Marshall" or "Petitioner"). *ECF No. 1* ("Petition"). The Magistrate Judge

considered Marshall's claims and recommended that the habeas petition be denied. Petitioner

filed objections, *ECF No. 71*, and the State filed a response to the objections, *ECF No. 76*.

Given the somewhat convoluted procedural history of this case, the Court will

outline those procedural developments that are relevant to the issues presented. On March 31,

1997, Marshall was indicted for one count of aggravated murder, with capital specifications, for

causing the death of Rocco V. Buccieri, Jr., three counts of aggravated robbery, and three counts

of kidnaping, all arising from the December 22, 1996 robbery of a Papa John's Pizza shop in

Garfield Heights, Ohio. *ECF No. 52*, Exs. 3-5 (Indictments). All counts included firearm

specifications. *Id.* Exs. 3-5. Marshall entered a plea of not guilty to all charges. *ECF No. 60* ("Traverse") at 2.

## I.

In September 1997, the case proceeded to trial before Judge Timothy McGinty. The jury found Marshall guilty of all counts and specifications. *Id. Exhs. 31-32.* During the trial, the State presented the testimony of Tony Haynes, a childhood friend of Marshall. Haynes testified that Marshall advised him that he was responsible for the December 22, 1996 robbery of Papa John's, and that he had shot Buccieri three times. *ECF No. 24* (Tr. at 596-600). After receiving this information, Haynes contacted Detective Mazzola and provided him with a statement detailing Marshall's admission. *ECF No. 27* (Tr. at 737, 744). The court allowed Haynes to read this statement, which was marked for identification purposes as State's Exhibit 37, into the record.[1] *Id.* (Tr. at 766, 807, 816-829).

On October 9, 1997, after the conclusion of the penalty phase of the trial, the jury recommended a sentence of death for the aggravated murder conviction. *Id. Ex. 38.* On October 10, 1997, the trial court orally pronounced a sentence of death upon finding that the aggravating factors that Marshall was found guilty of committing outweighed the mitigating factors beyond a reasonable doubt. *ECF No. 28* (Tr. at 30). The trial court's acceptance of the jury recommendation was never journalized.[2] At some point after the trial judge orally pronounced his sentence, he became aware that the jury was not instructed on the option of life

---

[1]The statement, although read to the jury, was not admitted as an exhibit. *ECF No. 29* (Tr. at 1696-1698)

[2]The parties agree that Marshall was never sentenced to death. *ECF No. 71, Petitioner's Objections* at 2; *ECF No. 76, Response to Petitioner's Objections* at 5.

without the possibility of parole.[3] *ECF No. 52*, Ex. 68 at 2-3. As a result, Judge McGinty ordered a new sentencing hearing to be held before a newly impaneled jury, and recused himself from further proceedings in the case. *Id.* Ex. 68 at 3-5. The case was then re-assigned to Judge Carolyn Friedland. *Id.* Ex. 40.

In December 1997, Judge Friedland granted Marshall's motion for a new trial[4] and a second trial commenced on February 1, 2001.[5] *ECF No. 52*, Ex. 88. During the course of the trial, the State presented evidence that, despite reasonable efforts, it was unable to procure the live testimony of Tony Haynes. *ECF No. 59* (Tr. at 1219-1277). The State argued that Haynes' prior trial testimony could be admitted into evidence pursuant to a hearsay exception which allows a declarant's former testimony into evidence if, among other conditions, the declarant is "unavailable" to testify at trial. *Id.* (Tr. at 1278); *see* FED. R. EVID. 804. Judge Friedland ruled that the State did not establish unavailability, and precluded the State from introducing Haynes' former testimony into the record. *Id.* (Tr. at 1297).

At the second trial, Tony Haynes' brother, Richard, testified that Marshall admitted to him that he committed the robbery. *ECF No. 50* (Tr. at 453). When Richard asked Marshall whether he committed the murder, Marshall did not respond. *Id.* at 454, 462.

---

[3] The trial court's charge to the jury provided three alternative sentences: the death penalty, life imprisonment with the possibility of parole after 30 years, and life imprisonment with parole eligibility after 20 years. *ECF No. 30* (Tr. at 2380-2382).

[4] For present purposes, the basis of Judge Friedland's decision granting a completely new trial (guilt and sentencing phases) is not relevant.

[5] The lengthy delay between the granting of a new trial and commencement of that trial was due in part to an appeal of some pre-trial evidentiary rulings. *See ECF No. 53*, Ex. 180 (decision of Court of Appeals reversing trial court's decision to exclude certain evidence from the trial).

-3-

On February 14, 2001, the State offered its exhibits. At this time, the prosecutor stated that State's Exhibit 37 (Tony Haynes' statement) was "withdrawn."[6] *ECF No. 49* (Tr. at 1310). On February 14, immediately following the court's instructions, the jury was excused to begin deliberations. On February 16, the following question was submitted by the jury: "We, the jury, have an exhibit in our possession that was referenced during the trial but never introduced as evidence. (Tony Haynes statement, State Exhibit 37.) Is this acceptable by the law?" *ECF No. 59* (Tr. at 1542). After reading the question to counsel, Judge Friedland stated "[d]o I hear a motion from the defense?" *Id.* Defense counsel did not respond. The prosecutor indicated that he did not know how the statement found its way into the jury room to which Judge Friedland responded that the court "will be having a hearing on that." *Id.* at 1542-43. Judge Friedland then declared a mistrial *sua sponte* on the basis of prosecutorial misconduct and stated that "[the court] will entertain motions. We will have a hearing in two weeks." *Id.* at 1543. The record does not reflect that a hearing was held or that motions (or any response to the mistrial order) were filed.

On February 22, 2001, the trial court's mistrial declaration was journalized. This journal entry omitted any reference to prosecutorial misconduct and stated that a mistrial was declared because Haynes' out-of-court statement was "not properly before the jury." *ECF No. 52,* Ex. 91. Judge Friedland then recused herself from the case. *Id.* Ex. 92. Also on February

---

[6]During the second trial, Haynes' statement was referenced during the direct examination of government witness Detective Mazzola who testified that he took a statement from a witness named Tony Haynes. *ECF No. 59* (Tr. at 1179-81). The content of that statement was never read to the jury.

22, 2001, the court granted the State's application to appoint a special prosecutor to investigate

the circumstances under which the jury obtained the inadmissible evidence. *Id.* Exhs. 149-50.

In March 2001, the case was re-assigned to Judge Cirigliano. *Id.* Ex. 96.

Marshall filed a motion to dismiss all charges against him with prejudice on double jeopardy

grounds, arguing that the prosecutor engaged in misconduct designed to provoke a mistrial. *ECF*

*No. 53*, Ex. 157. A hearing was held, *id.* Ex. 187, and Judge Cirigliano denied the motion, *ECF*

*No. 52*, Ex. 118. The judge stated:

> [N]o evidence exists to support a conclusion that any prosecutor engaged
> in misconduct. In his report, the special prosecutor concluded that there was no
> direct evidence of prosecutorial misconduct in this case.
> Nor is there any evidence which supports a conclusion that any prosecutor
> acted with an intent to cause a mistrial in this case. The special prosecutor
> accepted that the prosecutor's aim was to secure a conviction. This report makes
> no conclusion, either directly or indirectly, that any prosecutor . . . intended to
> cause or in any way force a mistrial in this matter. Absent a showing that the
> prosecutor's conduct was intentionally calculated to cause a mistrial and absent
> any evidence of prosecutorial misconduct at all, the Double Jeopardy Clause of
> the Fifth Amendment is not triggered to bar a retrial in this matter.

*Id.* Ex. 118 at 3 (citations to the record omitted).

On October 31, 2003, Marshall filed the instant petition for a writ of habeas

corpus, alleging the following claims: (1) the commencement of a third trial violates petitioner's

rights under the Double Jeopardy Clause of the Fifth Amendment; (2) the admission of a co-

defendant's out-of-court statement infringes petitioner's rights under the Confrontation Clause of

the Sixth Amendment; and (3) prosecutorial misconduct in providing the jury with inadmissible

evidence was designed to cause a mistrial or unfairly obtain a conviction in violation of the Due

Process Clause of the Fifth Amendment.[7] *Petition* at 7-8. Marshall contemporaneously

---

[7]Petitioner does not request an evidentiary hearing.

requested a stay of his state court proceedings pending this Court's ruling on his habeas petition.

*ECF No. 53*, Ex. 162. Judge Cirigliano granted the motion and Marshall's state trial has been

held in abeyance pending habeas review. *ECF No 52*, Ex. 135. Because Marshall does not

object to the Magistrate Judge's recommendations on claims 2 and 3, the Court will only address

Marshall's double jeopardy claim.

## II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254, a petition for writ of habeas corpus filed by a state prisoner:

> shall not be granted with respect to any claim that was adjudicated
> on the merits in State court proceedings unless the adjudication of
> the claim--
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> state court proceeding.

*Id.* § 2254(d). In construing the second clause of subsection (d)(1), the U.S. Supreme Court has

held that a state-court decision involves an unreasonable application of Supreme Court law if the

state court:  (1) identifies the correct governing legal rule from the Supreme Court's cases but

unreasonably applies it to the facts of the particular case or (2) unreasonably extends a legal

principle from Supreme Court precedent to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply. *Williams v.*

*Taylor*, 529 U.S. 362, 407 (2000). "[T]he federal adjudication of double jeopardy claims raised

on pre-trial petitions for habeas corpus is appropriate when those claims have been raised and

rejected in the state trial court and under state law there is no right to interlocutory appeal."

-6-

*Harpster v. Ohio*, 128 F.3d 322, 325 (6th Cir. 1997). Judge Cirigliano rejected Marshall's pre-trial motion to dismiss the case on double jeopardy grounds and, under Ohio law, the denial of a motion to dismiss based on violation of the Double Jeopardy Clause is not a final appealable order. *Id.* at 326. Accordingly, the Court has jurisdiction to review Marshall's habeas petition.

### III.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). The policy underlying this provision

> is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*United States v. Jorn*, 400 U.S. 470, 479 (1971) (citing *Green v. United States*, 355 U.S. 184, 187 (1957)). Embodied within this policy of finality is the accused's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949); *United States v. Cameron*, 953 F.2d 240, 243 (6th Cir. 1992). "The Double Jeopardy Clause, however, does not act as an absolute bar to re-prosecution in every case." *United States v. Gantley*, 172 F.3d 422, 427 (6th Cir. 1999). In some circumstances, the defendant's right to have his case resolved by a particular tribunal must "be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade*, 336 U.S. at 689 (unforeseeable circumstances may render completion of a trial impossible). When a mistrial has been declared, a defendant may be retried if, and only if,

-7-

there is a "manifest necessity" for a mistrial, or the defendant requests or consents to a mistrial. *Pryor v. Bock*, 261 F. Supp. 2d 805, 808 (E.D. Mich. 2003); *Cameron*, 953 F.2d at 243.

Whether manifest necessity supports the trial court's declaration of a mistrial is a mixed question of law and fact. *Harpster*, 128 F.3d at 327; *see also Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999). Therefore, the Court must decide whether the state court grant of a mistrial involved an unreasonable application of clearly established Supreme Court law. *Harpster*, 128 F.3d at 327.

The U.S. Supreme Court first articulated the "manifest necessity" doctrine in *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824). The *Perez* approach "abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." *Illinois v. Somerville*, 410 U.S. 458, 462 (1973). Instead, *Perez* prescribed a case-by-case approach, taking into account all the circumstances to determine whether there was a manifest (i.e., a "high degree" of) necessity for the mistrial declaration. *Harpster*, 128 F.3d at 328 ("The manifest necessity doctrine does not require us to find that the trial court had no alternative but to declare a mistrial."); *Cameron*, 953 F.2d at 244 (manifest necessity analysis is fact-intensive); *Perez*, 22 U.S. at 580 (the power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for plain and obvious causes").

The standard of review for a double jeopardy claim following a mistrial varies according to the issues involved. *United States v. Stevens*, 177 F.3d 579, 583 (6th Cir. 1999). A trial judge's decision to declare a mistrial based on her assessment of juror bias is entitled to great deference. *Arizona v. Washington*, 434 U.S. 497, 513-14 (1978).

-8-

> [The trial judge] has seen and heard the jurors during their *voir dire* examination.
> [Sh]e is the judge most familiar with the evidence and the background of the case
> on trial. . . . In short, [s]he is far more "conversant with the factors relevant to the
> determination" than any reviewing court can possibly be.

*Id.* at 514. Accordingly, the determination that the jury has been biased by the introduction of

inadmissible, prejudicial evidence is best left to the informed discretion of the trial judge. *See*

*Stevens,* 177 F.3d at 583; *Harpster,* 128 F.3d at 328.

   Marshall argues that the mistrial declaration was not supported by manifest

necessity. He argues that the trial judge failed to consider less drastic alternatives, such as

instructing the jury to disregard the statement, interviewing the jury to determine which jurors, if

any, reviewed the statement, or allowing the jury to reach a verdict and, if necessary, declaring a

mistrial only if the court believed that the verdict was tainted by the statement. *Traverse* at 12;

*see also Objections* at 4. Indeed, the record reflects that Judge Friedland failed to discuss less

drastic options to granting a mistrial, and did not hold a hearing to ascertain how many jurors

saw the statement, or the extent to which those jurors examined the statement.[8] However, the

situation faced by the trial judge is not one which presented "obvious and adequate alternatives"

to aborting the trial, *see Glover v. McMackin,* 950 F.2d 1236, 1242 (6th Cir. 1991), or one in

which a simple corrective instruction would have sufficiently protected against juror bias. *See*

*Harpster,* 128 F.3d at 330 (amount of prejudice that could have resulted was miniscule); *United*

*States v. Reesor,* 10 Fed.Appx. 297, 304 (6th Cir. 2001) (unpublished) (mistrial is appropriate

where "erroneously admitted evidence is of an exceptionally prejudicial character, such that its

withdrawal from consideration by the jury cannot be expected to remove the harm"). "In

---

  [8]The Special Prosecutor reported that the jurors were interviewed during the
investigation. *SP Report* at 6. The report does not discuss the results of those interviews.

determining whether to grant a mistrial, a court's 'primary concern' should be 'fairness to the defendant.'" *United States v. Lott*, No. 96-6700, 1998 WL 384611 at *2 (6th Cir. June 19, 1998) (unpublished) (mistrial must be ordered where improperly admitted evidence is so prejudicial that the jury cannot be trusted to disregard it).

        In the present action, the trial judge acted rationally and responsibly in granting a mistrial. In fact, Marshall concedes that Judge Friedland "had no choice but to declare a mistrial *sua sponte*" due to the alleged government misconduct, *Traverse* at 14, and states that "[t]he evidentiary value of the [statement] was devastating to Marshall," *Objections* at 17. With respect to the murder charge, Tony Haynes' statement is qualitatively different from any of the testimony presented at the second trial. None of the eyewitnesses who were present at Papa John's on the night of the robbery actually observed the shooting. Although Detective Mazzola testified that Marshall's accomplice, Robert Martin, implicated Marshall as the shooter,[9] *ECF No. 58* (Tr. at 592, 610), a jury would place minimal weight on a statement of a co-defendant pointing a finger at his accomplice. Finally, the testimony of Tony Haynes' brother, Richard, is not anywhere near the caliber of Tony's statement. Richard testified that Marshall only admitted to committing the robbery. *ECF No. 50* (Tr. at 453). When Richard asked Marshall whether he committed the murder, Marshall did not respond. *Id.* at 454, 462. Tony, on the other hand, spells out in much detail Marshall's admission that he shot the victim three times. *See ECF No. 27* (Tr. at 818-19). The statement even describes the specific manner in which the shooting occurred. *See id.* No juror could have been expected to put Haynes' statement out of his/her

---

     [9]A videotaped statement of Martin was played to the jury. *ECF No. 58* (Tr. at 575-77). The Court has not seen or read that statement because a transcript of the recording is not a part of the record before the Court.

mind.  In Marshall's own words, the statement was "devastating."  In light of the extremely prejudicial nature of Tony Haynes' statement, the Court finds that Judge Friedland exercised sound discretion in determining that the ends of public justice would be defeated by a continuation of the proceedings.  *See Jorn*, 400 U.S. at 485.

In addition, according to the Special Prosecutor's report, the statement was first noticed by a juror on February 15, 2001.  *ECF No. 17, Ex. A* (Report of Special Prosecutor ("SP Report") at 4).  The juror raised a question about the presence of this statement among the exhibits.  *Id.*  Rather than immediately communicating the discovery of this statement to the court, the jury continued to deliberate for the remainder of the afternoon.  *Id.*  The jury did not present the court with its question until the following day.  *Id.*  Had Judge Friedland questioned the jurors, she would have uncovered these circumstances which further support a finding of manifest necessity.  Proceeding with deliberations after discovering inadmissible and extremely prejudicial evidence rendered the impact of the statement more severe, and the risk of taint more troubling.  Under these circumstances, a curative instruction would have been inadequate to remove the risk of taint.  Accordingly, the trial court's grant of a mistrial was supported by manifest necessity.

Furthermore, the Court finds that Marshall impliedly consented to a mistrial.  "Consent to a mistrial order should only be implied where the circumstances positively indicate a defendant's willingness to acquiesce in the order."  *Jones v. Hogg*, 732 F.2d 53, 57 (6th Cir. 1984).  Consent may not be inferred "merely because a defendant did not object to the declaration of a mistrial."  *Guntley*, 172 F.3d at 429.  Instead, "a defendant's failure to object to a

mistrial implies consent thereto only if the sum of the surrounding circumstances positively indicates this silence was tantamount to consent." *Id.*

In *Glover v. McMackin,* a panel of the Sixth Circuit concluded that the defendant did not acquiesce in the trial court's grant of a mistrial which was declared *sua sponte* during defense counsel's cross-examination of a rape victim. During counsel's attempt to attack the credibility of the witness, a number of objections were raised by the government and several sidebars were held by the trial court. *Glover,* 950 F.2d at 1238. At one point, the prosecutor claimed that counsel was trying to badger the witness. In response, the trial judge swiftly declared a mistrial, stating that he would not put up with counsel's conduct, and dismissed the jury. On habeas review, the Sixth Circuit rejected the argument that the defendant's failure to object constituted consent to the mistrial. The court held that "[t]he summary nature of the trial court's actions, a swift declaration followed by the immediate dismissal of the jury and adjournment of the court, rendered an objection both unlikely and meaningless." *Id.* at 1240.

In *United States v. Gantley,* the defendant testified at trial that he passed a polygraph test, in direct violation of the trial court's order excluding evidence of the test results. The trial judge declared a mistrial and then held an off-the-record conference with counsel at which time the prosecutor suggested an alternative to aborting the trial (which the judge considered and rejected) and defense counsel raised an additional concern that the court's reaction to the defendant's testimony in the presence of the jury may have been prejudicial. *Gantley,* 172 F.3d at 425-27. After the trial court went back on the record, he asked counsel if there was "anything else." *Id.* at 426. Counsel said no. Given the totality of the circumstances, the Sixth Circuit held that the defendant's failure to object implied consent to the mistrial.

The present case does not present the precipitous mistrial declaration ordered in *Glover* nor the deliberate consultation with counsel displayed in *Gantley*. However, the totality of the circumstances demonstrate that Marshall's failure to object, either orally or in writing, to the mistrial declaration was tantamount to consent. Marshall argues that he did not have an opportunity to object to the mistrial declaration, and the trial judge "did not allow [him] to argue his position on the ruling." *Traverse* at 12. This argument is without merit. After Judge Friedland informed counsel that the jury was in possession of Tony Haynes' statement, the prosecutor commented that he did not know how the statement was submitted to the jury. The judge responded to this remark. There is no reason that defense counsel could not have similarly voiced his concerns by objecting to the grant of a mistrial. It is important to note, as petitioner duly brings to our attention, that Judge Friedland's initial request for motions from the defense came *before* her mistrial declaration. *See Objections* at 10. Therefore, any non-response to this query cannot be construed as a failure to object to a mistrial order. Still, Marshall had an opportunity to respond once the mistrial was declared. Unlike the situation in *Glover*, Judge Friedland did not suddenly grant a mistrial in the middle of a heated cross-examination. After consulting with fellow judges, *see SP Report* at 5, Judge Friedland convened the parties,[10] advised them of the problem and informed them that she would be "entertain[ing] motions." Although the judge did not affirmatively ask the parties how they wished to proceed, counsel for

---

[10]In a *pro se* motion to dismiss filed with the state court, Marshall argued that he and co-counsel were not present when the judge declared a mistrial. *ECF No. 52*, Ex. 154 at 1. At the hearing on the motion to dismiss on grounds of double jeopardy, defense counsel also argued that Marshall was not present when the mistrial was declared. *ECF No. 53*, Ex. 187 (Hearing Tr.) at 53. However, this argument is not raised in the habeas petition. In fact, the objections to the R&R suggest that Marshall and all counsel were present when Judge Friedland declared the mistrial. *See Objections* at 6.

-13-

Marshall failed to voice an objection to the mistrial, either by oral statement or written submission to the court, despite having the opportunity to do so. The record reflects that the jury was not dismissed at the time the mistrial was declared. Counsel could have suggested other options, such as conducting an inquiry of the jurors, and counsel could have requested the opportunity to submit a written memorandum before Judge Friedland dismissed the jury. After examining the totality of the circumstances, the Court concludes that Marshall tacitly consented to Judge Friedland's declaration of a mistrial.

Defense counsel argues that the Magistrate Judge did not consider, in making his recommendation, the time required for counsel to consult with the defendant and to evaluate options prior to making an informed decision. *Objections* at 8. Where a defendant is faced with the choice of giving up his first jury or continuing with a trial tainted by prejudicial error, the important consideration, for double jeopardy purposes, is that he retain "primary control" over the course to be followed. *United States v. Dinitz,* 424 U.S. 600, 609 (1976). However, "[n]either party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, 'the public's interest in fair trials designed to end in just judgements' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impaneled." *Arizona v. Washington,* 434 U.S. 497, 515 (1978).

Finally, Marshall has not shown that the government was responsible for submitting the inadmissible evidence to the jury, nor has he shown that any misconduct was intended to provoke a mistrial. Although there was strong circumstantial evidence that the prosecutor caused the statement to be submitted to the jury, the results of the Special Prosecutor's investigation were inconclusive. Marshall's claim that the prosecutor improperly

submitted the statement to the jury because the State "needed an edge" as the case was not going

as well as the State would have hoped is mere speculation. *See Objections* at 10. The Special

Prosecutor found no direct evidence of misconduct, and the grand jury did not return an

indictment against the prosecutor.[11] Prosecutorial misconduct is not a bar to retrial unless the

misconduct is "intended to and does precipitate a successful motion for mistrial by the

defendant." *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993); *United States v. Colvin*,

138 Fed.Appx. 816, 820 (6th Cir. 2005) (unpublished). Marshall repeatedly claims that the

prosecutor intended to obtain a conviction by impermissible means. *Objections* at 14-15. Even

were this true, this is not the intent required to bar re-prosecution. *Oseni*, 996 F.2d at 188 ("The

only relevant intent is intent to terminate the trial, not intent to prevail at this trial by

impermissible means."); *Oregon v. Kennedy*, 456 U.S. 667, 676-77 (1982) (discussing rationale

underlying the heightened intent requirement).

## IV.

The Court recognizes that Marshall waited over two years for his jury to be

impaneled, and then had a mistrial declared after the entire case had been tried and submitted to

the jury for a verdict. Marshall argues that the second trial was going well on the homicide

charge. In fact, the investigation revealed that the jury was leaning heavily in favor of an

acquittal on the murder charge (by as much as an 11 to 1 margin) at the time the mistrial was

declared. *SP Report* at 16. "The judge must always temper the decision whether or not to abort

---

[11] Although Judge Friedland initially declared a mistrial based on prosecutorial
misconduct, the journal entry declaring the mistrial omits any reference to such
misconduct. The Magistrate Judge correctly notes that an Ohio court speaks only through
its journal entry, and a judge may revise any oral pronouncements before final journal
entry. *R&R* at 20 n.76.

the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S. 470, 486 (1971). Though recognizing the hardship placed upon Marshall as a result of the mistrial, the Court must also consider society's interest in fair trials and the enforcement of criminal laws, an interest which is all the more significant in capital cases. In this case, the Court finds that the defendant's valued right to have his case resolved by a particular tribunal must "be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689 (1949)

Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation **(ECF No. 68)**. The habeas petition **(ECF No. 1)** is hereby **DENIED.**

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster*      *August 4, 2006*
**Dan Aaron Polster**
**United States District Judge**

-16-